UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| W6 RESTAURANT GROUP, LTD | : | |
| DBA Barley House | : | |
| 1261-65 West 6th St. | : | |
| Cleveland, OH 44113 | : | |
| | : | |
| and | : | |
| | : | |
| 1909 W25, LLC | : | |
| DBA TownHall Cleveland | : | |
| 1909 W 25th Street | : | |
| Cleveland, OH 44113 | : | |
| | : | CASE NO. _____ |
| and | : | |
| | : | JUDGE_____ |
| 2125 CAFÉ, LLC | : | |
| DBA Green Goat Café Bar | : | |
| 2125 Superior Ave, East | : | |
| Cleveland, OH 44115 | : | |
| | : | |
| and | : | |
| | : | **(Jury Demand Endorsed Hereon)** |
| TH CBUS, LLC | : | |
| DBA TownHall Columbus | : | |
| 792 North High Street | : | |
| Columbus, OH 43215 | : | |
| | : | |
| and | : | |
| | : | |
| 100 E. CENTRAL BOULEVARD, LLC | : | |
| DBA Stagger Inn | : | |
| 100 East Central Blvd. | : | |
| Orlando, FL 32801 | : | |
| | : | |
| and | : | |
| | : | |
| BISTECCA CORPORATION | : | |
| DBA Parma Heights Harry Buffalo | : | |
| 6425 Pearl Road | : | |
| Parma Heights, OH 44130 | : | |
| | : | |
| and | : | |
| | : | |

HB CHURCH STREET, LLC                :
DBA Harry Buffalo                    :
129 W. Church St.                    :
Orlando, FL 32801                    :
                                     :
and                                  :
                                     :
HHHB, LLC                            :
DBA Harry Buffalo                    :
5604 Wilson Mills Road               :
Highland Heights, OH 44143           :                              :
                                     :
and                                  :
                                     :
JSJ KLUB, LLC                        :
DBA Harry Buffalo                    :
2120 E. 4th Street                   :
Cleveland, OH 44115                  :
                                     :
and                                  :
                                     :
MGG HOSPITALITY, LLC                 :
DBA Rebol                            :
101 W. Superior Ave.                 :
Cleveland, OH 44113                  :
                                     :
and                                  :
                                     :
STAR BAR & GRILL, INC.               :
DBA Harry Buffalo Westfield          :
3619 Midway Mall Unit B20            :
Elyria, OH 44035                     :
                                     :
and                                  :
                                     :
THE OTHER BAR, LLC                   :
DBA The Other Bar                    :
18 Wall Street Plaza                 :
Orlando FL 32801                     :
                                     :
and                                  :
                                     :
MANDRAKE COLUMBUS, LLC               :
DBA TownHall Rooftop                 :
810 North High Street                :
Columbus, OH 43215                   :

and                                              :
                                                 :
                                                 :
WESTERVILLE RESTAURANT                           :
GROUP, LLC                                       :
DBA Harry Buffalo                                :
6150 Sunbury Rd., Unit A                         :
Columbus, OH 43081                               :
                                                 :
and                                              :
                                                 :
SUMMER HOUSE, LLC                                :
DBA Summer House                                 :
12900 Lake Avenue                                :
Lakewood, Ohio 44107                             :
                                                 :
v.                                               :
                                                 :
ISABELLA CASILLAS GUZMAN,                        :
in her individual capacity as                    :
Administrator of the Small                       :
Business Administration,                         :
409 3rd St. SW                              :
Washington, D.C. 20416                           :
                                                 :
and                                              :
                                                 :
JOHN A. MILLER                                   :
in his individual capacity as                    :
Deputy Associate Administrator                   :
For Capital Access of the Small                  :
Business Administration,                         :
409 3rd St. SW                              :
Washington, D.C. 20416                           :
                                                 :
and                                              :
                                                 :
UNKNOWN EMPLOYEES OF                             :
THE SMALL BUSINESS                               :
ADMINISTRATION in their                          :
individual capacities,                           :
409 3rd St. SW                              :
Washington, D.C. 20416                           :
                                                 :
                    Defendants.                  :

## **COMPLAINT AND JURY DEMAND**

Section 5003 of the American Rescue Plan Act ("ARPA") appropriated $28.6 billion to create the Restaurant Revitalization Fund ("RRF"), which is administered by the Small Business Administration (the "SBA"). The RRF provided relief for restaurants harmed by the COVID-19 pandemic, but the statute required Administrator Isabella Casillas Guzman to give discriminatory preferences to restaurants owned by women and certain racial minorities. The statute provides that during the first 21 days of this program, which started on May 3, 2021, the administrator of the SBA must "prioritize awarding grants" to businesses owned by women and specific racial minorities.

The Sixth Circuit, in *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021), addressed the issue of "whether the government can allocate limited coronavirus relief funds based on the race and sex of the applicants." *Id.* at 356. The Sixth Circuit held that the government cannot lawfully distribute funds in this manner and it enjoined the SBA from using these "unconstitutional criteria when processing" the plaintiff's application under the RRF. *Id.*

"Government policies that classify people by race are presumptively invalid." *Id.* at 360. To overcome that presumption of invalidity, the government must show that favoring one race over another is necessary to achieve a compelling state interest. However, even when the government can show that it has a compelling interest, it must narrowly tailor its remedy to advance that interest. This is a very demanding standard, which few programs will survive. The SBA conceded that the RRF had to withstand strict scrutiny because it grants privileges to individuals based explicitly on their race. *Id.* 360.

The *Vitolo* Court held that the SBA lacked "a compelling interest in awarding Restaurant Revitalization Funds based on the race of the applicants" and, therefore, the policy's use of race

violated equal protection. *Id.* 362. The *Vitolo* Court further held that "the discriminatory disbursement of Restaurant Revitalization Funds is not narrowly tailored to further that interest." *Id.* 362.

The *Vitolo* Court's summary of the SBA's desire to divide Americans by race highlighted the unlawfulness of the SBA's disbursement of the RRF:

> The stark realities of the Small Business Administration's racial gerrymandering are inescapable. Imagine two childhood friends— one Indian, one Afghan. Both own restaurants, and both have suffered devastating losses during the pandemic. If both apply to the Restaurant Revitalization Fund, the Indian applicant will presumptively receive priority consideration over his Afghan friend. Why? Because of his ethnic heritage. It is indeed "a sordid business" to divide "us up by race." League of United Latin Am. Citizens v. Perry, 548 U.S. 399, 511, 126 S. Ct. 2594, 165 L. Ed. 2d 609 (2006) (opinion of Roberts, C.J.). And the government's attempt to do so here violates the Constitution.

*Id.* at 364.

This lawsuit is filed by restaurants that timely filed for funds under the RRF. In fact, Plaintiffs 100 E. Central Boulevard, LLC dba Stagger Inn ("Stagger Inn"), 1909 W25, LLC dba Town Hall Ohio City ("Town Hall"), 2125 Cafe, LLC dba Green Goat ("Green Goat"), TH CBUS, LLC dba Town Hall Columbus ("Town Hall Columbus"), Bistecca Corporation dba Parma Hts. Harry Buffalo ("Harry Buffalo"), HB Church Street, LLC dba Harry Buffalo Orlando ("Harry Buffalo Orlando"), HHHB, LLC dba Highland Heights Harry Buffalo ("Highland Heights Harry Buffalo"), JSJ Klub, LLC dba E.4ᵗʰ Harry Buffalo ("E.4ᵗʰ Harry Buffalo"), MGG Hospitality, LLC dba Rebol Cleveland ("Rebol"), Star Bar & Grill, Inc. dba Harry Buffalo ("Star Grill"), The Other Bar, LLC ("The Other Bar"), W6 Restaurant Group, LTD, dba Barley House ("Barley House"), Mandrake Columbus, LLC dba Town Hall Rooftop ("Town Hall Rooftop"), Westerville Restaurant Group, LLC dba Harry Buffalo ("Westerville Harry Buffalo"), and

Summer House, LLC dba Summer House ("Summer House") (collectively, "Plaintiffs") submitted their completed applications within the first few minutes after the RRF began accepting applications on May 3, 2021, but they never had their applications approved by the SBA. The SBA's actions, through Defendants Isabella Casillas Guzman ("Guzman"), Defendant John A. Miller ("Miller"), and unknown employees of the SBA (collectively, "Defendants") denied Plaintiffs' applications based on race. Accordingly, Plaintiffs aver and state as follows:

## **THE PARTIES**

1.      Plaintiff Barley House is located in the Cleveland Warehouse District. Barley House offers American cuisine and is the best nightclub in the City of Cleveland.

2.      Plaintiff Stagger Inn is an American Country Bar located in the heart of Downtown Orlando. Stagger Inn offers country music & dancing in an unfussy local watering hole with a standard range of drinks.

3.      Plaintiff Town Hall is located in Ohio City. Town Hall offers a full-service restaurant and bar. The food offerings are locally sourced and Town Hall offers innovative bar bites and vegan options served in a contemporary setting with patio. Town Hall also offers an urban café that offers fresh juice and espresso.

4.      Plaintiff Town Hall Columbus is located in the Short North. Town Hall Columbus is the healthiest restaurant in the country. Town Hall Columbus offers health-conscious fare, homemade juices, and a full-service bar offering craft beers.

5.      Plaintiff Harry Buffalo is located in Parma Heights, Ohio. Harry Buffalo is a restaurant and sports bar chain serving new American fare, bison burgers, and more in a lively setting.

6.      Plaintiff Harry Buffalo Orlando is located in downtown Orlando, Florida.  Harry Buffalo is a restaurant and sports bar chain serving new American fare, bison burgers, and more in a lively setting.

7.      Plaintiff Highland Heights Harry Buffalo is located in Highland Heights, Ohio. Harry Buffalo is a restaurant and sports bar chain serving new American fare, bison burgers, and more in a lively setting.

8.      Plaintiff E.4th Harry Buffalo is located in Cleveland's East Fourth District.  . Harry Buffalo is a restaurant and sports bar chain serving new American fare, bison burgers, and more in a lively setting.

9.      Plaintiff Rebol is located in Cleveland's Public Square.  Rebol's mission is to create a new standard of wellness by providing functional nutrition that improves the customer's quality of life.  Rebol offers dine in and carry out food service.

10.     Plaintiff Star Grill is a Harry Buffalo located in Midway Mall, Elyria, Ohio. Harry Buffalo is a restaurant and sports bar chain serving new American fare, bison burgers, and more in a lively setting.

11.     Plaintiff The Other Bar is located in Orlando, Florida.  The Other Bar is a night club that offers food and other attractions, such as live comedians.

12.     Plaintiff Summer House is located in Cleveland's Gold Coast.  Summer House has set a new standard for scratch-made food, smooth drinks, and good vibes.  Summer House has a full-service bar and its restaurant combines creative, shareable plates with fresh, modern twists on favorite standard entrees.

13.     Plaintiff  Town Hall Rooftop is located in the Short North.  Town Hall Rooftop is the healthiest restaurant in the country.  Town Hall Rooftop offers health-conscious fare, homemade juices, and a full-service bar offering craft beers.

14.     Plaintiff Westerville Harry Buffalo is located in Westerville, Ohio.  Harry Buffalo is a restaurant and sports bar chain serving new American fare, bison burgers, and more in a lively setting.

15.     The United States Small Business Administration is an Executive, Cabinet level Department and was created on July 30, 1953, by President Eisenhower with the signing of the Small Business Act, codified at 15 U.S.C. Chapter 14A.

16.     Isabella Casillas Guzman is the Administrator of the United States Small Business Administration. Defendant Guzman is sued in her individual capacity for acts and omissions occurring in connection with duties performed on behalf of the United States Government, acting under the color of law.

17.     Defendant Guzman is responsible for administering the Restaurant Revitalization Fund.

18.     Defendant Miller is the Deputy Associate Administrator for Capital Access for the SBA.

19.     The Office of Capital Access is responsible for the operation development of policy for the SBA's business loan programs authorized under the Small Business Act and the RRF program authorized under the ARPA, among others.

20.     Miller is the highest-ranking career official in the Office of Capital Access.

21.     Unknown employees or agents of the Small Business Administration are sued in their individual capacity for acts and omissions occurring in connection with duties performed on

behalf of the United States Government, acting under the color of law. It is unknown where the unknown employees or agents of the Small Business Administration reside. Discovery is needed to determine additional names and residencies.

## JURISDICTION AND VENUE

22. This Court has original jurisdiction over this civil action because this action arising under the Constitution, laws, or treaties of the United States. 28 U.S. Code § 1331.

23. This Court also has original jurisdiction over this civil action under 28 U.S. Code § 1343 because Plaintiffs are seeking damages for civil rights violations.

24. Plaintiffs bring this action against Defendants as employees of the SBA, acting under color of federal law within the scope of their employment in their individual capacity pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to recover damages for violations of Plaintiffs' equal protection and due process rights under the United States Constitution.

25. Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1).

26. Plaintiffs are all privately held bars and/or restaurants that have common ownership.

27. Many of Plaintiffs' owners reside in this district.

28. A substantial part of the events giving rise to this claim occurred in this district and a substantial part of the property subject to this action is situated in this district.

## THE RESTAURANT REVITALIZATION FUND

29. In March 2021, the United States pushed aside equality under the law by enacting a grant program that gives special treatment based on race and gender. Under Section 5003 of the American Rescue Plan Act (ARPA), Congress appropriated $28.6 billion to create the RRF, to

be administered by the SBA. Pub. L. No. 117-2, § 5003(b)(2)(A), (c) (Restaurant Revitalization Fund).

30.     ARPA provides that the "Administer shall use amounts in the Fund to make grants" to restaurants that require grant support due to "the uncertainty of current economic conditions."

31.     The RRF was created to aid small privately owned restaurants, not large chains.

32.     The SBA processes the applications and distributes the funds. During the application process, restaurant owners must certify to the agency that the grant is necessary to support ongoing operations.

33.     The COVID-19 pandemic impacted all privately owned restaurants.

34.     Demand for RRF awards was immediate and overwhelming from priority and non-priority applicants alike.

35.     On May 5, 2021, SBA reported that it had received approximately 186,000 applications in two days from both priority and non-priority businesses.

36.     On May 18, 2021, SBA announced that it had received more than 303,000 applications, requesting over $69 billion in funds.

37.     Due to overwhelming demand, claims on the RRF rapidly dwarfed the allocation of funds set aside by Congress and, accordingly, the SBA stopped accepting RRF applications on May 24, 2021.

38.     The SBA continued paying out RRF awards until June 30, 2021, at which point the Fund became exhausted.

39.     SBA announced on June 30, 2021 that the RRF had exhausted the $28.6 billion allocated to it by Congress and thus was closed.

40.     The RRF is now closed.

41.     SBA further announced that the RRF had provided awards to 105,000 restaurants after receiving over 370,000 applications.

## **THE RRF DISTRIBUTES FUNDS BASED ON RACE AND SEX**

42.     Although the COVID-19 pandemic has impacted all restaurants, the RRF has been distributed based on race and sex.

43.     The key to getting a grant under the RRF is to get in the queue before the money runs out. The SBA distributes money on a first come, first served basis. But there is a catch.

44.     During the first 21 days the agency gives grants to priority applicants only. Priority applicants are restaurants that are at least 51% owned and controlled by women, veterans, or the "socially and economically disadvantaged."  Non-priority restaurants may apply during this time, but they will not receive a grant until the initial period expires.  If the fund is depleted by then, the non-priority restaurants are out of luck; the ARPA does not provide for its replenishment.

45.     If a restaurant is not 51% owned by a woman or veteran, the restaurant owner has to qualify as "socially and economically disadvantaged" to get priority status.

46.     ARPA defines social and economic disadvantage by reference to the Small Business Act.

47.     Under the Small Business Act, a person is considered "socially disadvantaged" if he has been "subjected to racial or ethnic prejudice" or "cultural bias" based solely on his immutable characteristics.

48.     A person is considered "economically disadvantaged" if (1) he is socially disadvantaged; and (2) he faces "diminished capital and credit opportunities" compared to non-socially disadvantaged people who operate in the same industry. 15 U.S.C. § 637(a)(6)(A).

49.     The SBA has injected explicit racial and ethnic preferences into the priority process.

50.     Under a regulation that predates the pandemic, the agency presumes certain applicants are socially disadvantaged based solely on their race or ethnicity.

51.     Groups that presumptively qualify as socially disadvantaged—and thus get to jump to the front of the line for priority consideration—include "Black Americans," "Hispanic Americans," "Asian Pacific Americans," "Native Americans," and "Subcontinent Asian Americans."   If you are in one of these groups, the SBA assumes you qualify as socially disadvantaged. Indeed, the only way not to qualify is if someone comes forward "with credible evidence to the contrary."

52.     Applicants who do not get the presumption must prove they have experienced racial or ethnic discrimination or cultural bias by a preponderance of the evidence.

53.     After reviewing that evidence, the SBA will consider an applicant a victim of "individual social disadvantage" if it determines that (i) the applicant suffered episodes of discrimination; (ii) each episode "negatively impacted the individual's entry or advancement in the business world"; and (iii) together, those episodes caused the applicant to suffer "chronic and substantial social disadvantage."

54.     The added evidentiary burden faced by white men and other non-presumptively disadvantaged groups stands in marked contrast with lenient evidentiary standards set by the

ARPA. Congress recognized the urgency of providing relief to small restaurants struggling to weather the pandemic. So it sought to cut as much red tape as possible.

54. 55.    To avoid "imposing additional burdens on applicants," the ARPA requires the SBA to accept the applicant's "existing business identifiers" to show eligibility for a grant, rather than requiring "other forms of registration or identification that may not be common to their industry."

56.    During the priority period from May 3 to May 24, 2021, SBA prioritized initiating processing of RRF applications from veteran-owned and women-owned restaurants, as well as restaurants owned by socially and economically disadvantaged individuals.

57.    After the expiration of the priority period, SBA made operational changes in order to comply with section 5003's instruction that the agency prioritize "awarding grants to eligible entities" only during the "initial 21-day period." ARPA § 5003(c)(3)(A).

58.    On May 25, 2021, SBA began processing applications from nonpriority applicants with FY 2019 gross revenues less than $50,000.

59.    SBA booked the final priority applications that were funded into SBA's E-Tran system for disbursement of funds on the afternoon of May 27, 2021.

60.    On June 30, 2021, SBA completed distribution of the $28.6 billion allocated to the RRF and announced that the fund had become exhausted.

## THE SIXTH CIRCUIT REJECTED THE RRF BECAUSE IT WAS UNLAWFULLY BASED ON RACE

61.    "The Constitution created a government dedicated to equal justice under law." *Cooper v. Aaron*, 358 U.S. 1, 19 (1958). The government may not frustrate this principle of equality by making "distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective." *Lehr v. Robertson*, 463 U.S. 248, 265 (1983).

Whether it be discrimination based on race or gender, "unreasonable discrimination" by the government is never permitted. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

62.     The Sixth Circuit, in *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021), addressed the issue of "whether the government can allocate limited coronavirus relief funds based on the race and sex of the applicants." *Id.* at 356.  The Sixth Circuit held that the government cannot lawfully distribute funds in this manner and it enjoined the Small Business Administration from using these "unconstitutional criteria when processing" the plaintiff's application under the Restaurant Revitalization Fund. *Id.*

63.     "Government policies that classify people by race are presumptively invalid." *Id.* at 360.  To overcome that presumption of invalidity, the government must show that favoring one race over another is necessary to achieve a compelling state interest.  However, even when the government can show that it has a compelling interest, it must narrowly tailor its remedy to advance that interest. This is a very demanding standard, which few programs will survive.  The SBA conceded that the Restaurant Revitalization Fund had to withstand strict scrutiny because it grants privileges to individuals based explicitly on their race. *Id.* 360.

64.     The *Vitolo* Court held that the SBA lacked "a compelling interest in awarding Restaurant Revitalization Funds based on the race of the applicants" and, therefore, the policy's use of race violated equal protection.  *Id.* 362.  The *Vitolo* Court further held that "the discriminatory disbursement of Restaurant Revitalization Funds is not narrowly tailored to further that interest." *Id.* 362.

65.     On remand, the SBA took the position that injunctive relief was moot because the RRF funds had already been distributed.

66.     It is obvious that the SBA and the Defendants accelerated the review process in order to avoid review by the Courts.

67.     Defendants distributed the RRF proceeds through a streamlined process in order to avoid review by the Courts.

68.     If this Court does not provide a *Bivens* cause of action in this matter, Defendants will have successfully violate the Constitutional rights of millions of Americans without remedy to those damages. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

69.     Without a Bivens cause of action, Defendants could violate the law again and again, without repercussion.

70.     There is not any alternative, existing process for protecting the constitutional interest at issue.

71.     In addition, there are no special factors counseling hesitation of permitting a Bivens cause of action in this matter.

72.     To the contrary, Defendants knowingly violated the equal protection provision of the Constitution and distributed the federal funds on an expedited basis in order to avoid effective Court review.

## DEFENDANTS' ACTIONS WERE INTENTIONAL AND DESIGNED TO DEPRIVE PLAINITFFS OF THEIR CONSTITUTIONAL RIGHT TO EQUAL PROTECTION

73.     Defendants' actions were intentional and designed to deprive Plaintiffs of their constitutional right to equal protection.

74.     Plaintiffs are privately-owned bars and restaurants that operate in this District and throughout the United States.

75.     As with other bars and restaurants, Plaintiffs' operations suffered greatly during the COVID-19 pandemic.

76.     When the RRF opened, Plaintiffs filed applications within the first minutes of the opening.

77.     Plaintiffs' applications fully complied with the non-race and sex-based criteria for distribution of the RRF funds.

78.     Aside from Summer House, Plaintiffs' majority owner, Robert George, is of Middle Eastern decent.

79.     The SBA does not include Americans of Middle Eastern decent in the definition of "socially disadvantaged individuals" and "economically disadvantaged individuals."

80.     Plaintiff Summer House has a majority owner who is a female, but Summer House was nonetheless denied RRF funds due to the SBA's unlawful distribution of funds.

81.     Had the SBA not unlawfully considered race and sex when distributing the RRF, Plaintiffs' applications would have been granted and RRF would have been distributed to Plaintiffs.

82.     Based on the RRF guidelines, Plaintiffs would have been entitled to the following RRF proceeds:

83.     Defendants have intentionally acted to deprive Plaintiffs of their constitutional right to equal protection.

84.     Plaintiffs have been damaged by Defendant's intentional actions.

### COUNT I – EQUAL PROTECTION AND DUE PROCESS VIOLATIONS

85.     Plaintiffs incorporate paragraphs 1 through 84 of the Complaint as if fully rewritten.

86.     The Constitution forbids "discrimination by the general government . . .against any citizen because of his race." *Gibson v. State of Mississippi*, 162 U.S. 565, 591 (1896).

87.     Gender discrimination is also unconstitutional. Courts "carefully inspect[ ] official action that closes a door or denies opportunity to women (or to men)." *United States v. Virginia*, 518 U.S. 515, 532 (1996).

88.     "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013).

89.     "[A]ll racial classifications imposed by government must be analyzed by a reviewing court under strict scrutiny." *Johnson v. California*, 543 U.S. 499, 505 (2005) (citation omitted). "Under strict scrutiny, the government has the burden of proving that racial classifications are narrowly tailored measures that further compelling governmental interests." Id. (citation omitted).

90.     When gender discrimination is employed, the burden "rests entirely" on the government to offer an "exceedingly persuasive" justification and to prove that "the discriminatory means employed are substantially related to the achievement of those objectives." *Virginia*, 518 U.S. at 532 (citations omitted).

91.     Section 5003 of ARPA imposes racial classifications and grants a benefit—priority consideration—based on those racial classifications.

92.     Section 5003 of ARPA likewise uses gender discrimination as a method of distributing funds through a gender-based priority consideration.

93.     Defendant is responsible for interpreting and implementing Section 5003 of ARPA.

94.     Although Plaintiffs suffered from the COVID-19 pandemic and are otherwise eligible for a grant under the RRF, Plaintiffs were ineligible for priority consideration and instead were pushed to the back of the line, because George is not a favored race.

95.     Plaintiffs applied for a grant under Section 5003 of ARPA and were denied priority consideration because of George's race.

96.     The racial classifications under Section 5003 of ARPA are unconstitutional because they violate the Equal Protection and Due Process guarantees in the United States Constitution. These racial classifications under Section 5003 of ARPA are not narrowly tailored to serve a compelling government interest.

97.     The gender-based classification under Section 5003 of ARPA is unconstitutional because it violates the Equal Protection and Due Process guarantees in the United States Constitution. This gender-based classification is not supported by an exceedingly persuasive objective, and the discriminatory means employed are not substantially related to the achievement of any such objective.

98.     Plaintiffs have suffered damages as a result of Defendants' intentional, actions designed to deprive Plaintiffs of their constitutional rights and protection.

99.     Plaintiffs have lost the RRF proceeds that they qualify for but for Plaintiffs' owner's race and sex.

100.    Defendants' actions were intentional, malicious, discriminatory, done with deliberate indifference, and done ill will and support the awarding of punitive damages to Plaintiffs.

101.    Plaintiffs' damages are in excess of Seventy-Five Thousand Dollars.

## COUNT II – BIVENS CAUSE OF ACTION

102.    Plaintiffs incorporate paragraphs 1 through 101 of the Complaint as if fully rewritten.

103.    Plaintiffs bring this action against Defendants as employees of the SBA, acting under color of federal law within the scope of their employment in their individual capacity pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) to recover damages for violations of Plaintiffs' equal protection and due process rights under the United States Constitution.

104.    There are two elements to any Bivens claim: the plaintiff suffers a constitutional deprivation; and the deprivation was caused by someone acting under federal authority. *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014); *Marcilis v. Twp. of Redford*, 693 F.3d 589, 595 (6th Cir. 2012); *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

105.    Plaintiffs have suffered a constitutional deprivation.

106.    Plaintiff have suffered equal protection and due process constitutional deprivations.

107.    Plaintiffs' deprivation has been caused by Defendants.

108.    Defendants have acted under federal authority.

109.    Plaintiffs have suffered damages as a result of Defendants' intentional, actions designed to deprive Plaintiffs of their constitutional rights and protection.

110.    Plaintiffs have lost the RRF proceeds that they qualify for but for Plaintiffs' owner's race and sex.

111.    Defendants' actions were intentional, malicious, discriminatory, done with deliberate indifference, and done ill will and support the awarding of punitive damages to Plaintiffs.

112.    Plaintiffs' damages are in excess of Seventy-Five Thousand Dollars.

113.    Plaintiffs should be awarded their attorney fees, interest on the RRF proceeds and other remedies available to them.

WHEREFORE, Plaintiffs demand judgment and relief against Defendants as follows:

1.    Declare section 5003(c)(3)(A) of the American Rescue Plan Act of 2021, H.R. 1319, 117th Cong. (2021), unconstitutional because it requires discrimination on account of race and sex in awarding funds under the Restaurant Revitalization Fund;

2.    Declare that Defendants violated Defendants' constitutional rights of Plaintiffs by discriminating on account of race and sex in administering the Restaurant Revitalization Fund;

3.    Award Plaintiffs compensatory damages against Administrator Guzman in her individual capacity;

4.    Award Plaintiffs compensatory damages against Miller in his individual capacity;

5.    Award Plaintiffs compensatory damages against the unknown employees of the SBA;

6.    Enter a permanent injunction enjoining Defendants from recovering Restaurant Revitalization Funds disbursed to Plaintiffs;

7.    Award Plaintiffs punitive damages against Administrator Guzman in her individual capacity;

8.    Award Plaintiffs punitive damages against Miller in his individual capacity;

9.    Award Plaintiffs punitive damages against the unknown employees of the SBA;

10.     Award Plaintiffs' costs and attorneys' fees;

11.     Award all other relief that the Court may deem just, proper, or equitable.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street, Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com

Edward W. Hastie, Esq. (0079438)
1258 Grandview Avenue, Suite B
Columbus, Ohio 43212
Phone: (614) 488-2800
ed@hastielegal.com

*Attorneys for Plaintiff*

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury is respectfully requested on all the issues presented herein.

*/s/ David A. Campbell*
David A. Campbell (0066494)

*One of the Attorneys for Plaintiffs*
