UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| W6 RESTAURANT GROUP, LTD, DBA Barley House, et al., | ) CASE NO. 1:21-CV-02361 ) ) JUDGE BRIDGET MEEHAN BRENNAN |
| Plaintiffs | ) ) |
| v. | ) ) |
| ISABELLA CASILLAS GUZMAN, in her official and individual capacity as Administrator of the Small Business Administration, et al., | ) ) ) ) ) |
| Defendant | ) ) |

**MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY**

**I.    INTRODUCTION**

The Plaintiffs consist of fourteen restaurants.  Robert George, who has submitted a Declaration in support of this Motion, is the majority owner of thirteen of them and has an ownership interest in the remaining one.  During the pandemic, with all of the resulting shut downs and inability for businesses to operate normally, Plaintiffs incurred substantial losses.  Thus, when Congress created the Restaurant Revitalization Fund ("RRF"), authorizing the Small Business Administration ("SBA") to distribute $28.6 billion to restaurants that were harmed by the COVID-19 pandemic, Plaintiffs filed applications for relief within minutes of the opening of the RRF portal.  However, Plaintiffs have not received any RRF distributions because the SBA, acting through its Administrators, did not operate the grant program on a neutral, equal and first-come, first-serve basis.  Rather, the RRF dictated that the SBA administer the RRF funding by giving

4869-9187-1536.1

priority to certain groups on the basis of race and gender. Plaintiffs' applications were moved to the back of the line, behind those of the preferred groups.[1]

The SBA was sued by a number of restaurants arguing that its preferential processing of applications was unconstitutional. In May 2021, the Sixth Circuit, in *Vitolo v. Guzman,* 999 F.3d 353, 366 (6th Cir. 2021), held that the preferential processing of claims on the basis of race and sex was unconstitutional. However, soon after the Sixth Circuit issued its decision, the SBA announced that the fund was depleted.

Most recently, the U.S. Government Accountability Office ("GAO"), which under the CARES Act is responsible for monitoring federal efforts to respond to the COVID-19 pandemic, reported that the SBA is holding $180 million of unobligated and not yet distributed RRF funds. *See* U.S. Gov't Accountability Off., GAO-22-105442, Restaurant Revitalization Fund: Opportunities Exist to Improve Oversight (2022). In the report, the GAO identified nine major deficiencies with the SBA's pre and post award controls.[2] *Id.* at pp. 10-55. Notably, the report provides that the GAO previously identified substantial flaws with the SBA's design and execution of pre and post award controls, but as of June 2022, the SBA had yet to make any assessment. *Id.* at p. 55. The flaws identified by the GAO are relevant as they relate to, among other things, award

---

[1] Defendant Isabella Casillas Guzman is the Administrator of the SBA; Defendant John Miller is the Deputy Associate Administrator for Capital Access for the SBA. Defendants are responsible for administering the RRF.
[2] The deficiencies include: (1) the SBA failing to fully leverage data from its other COVID-19 relief programs, resulted in number of fraudulent awards; (2) SBA awarded RRF funds to ineligible businesses that were not entitled to receive funding; (3) SBA failed to fully verify an applicant's reported affiliations; (4) SBA failed to assess pre-award controls; (5) SBA has limited post-award controls for identifying fraudulent and ineligible recipients; (6) SBA failed to enforce compliance with reporting requirements or collected information on recipient operating status; (7) the SBA failed to use data analytics to proactively identify fraudulent awards; (8) SBA has not fully leveraged enforcement information; and (9) SBA does not have a plan to act on or respond promptly to potential fraudulent or suspicious awards.

recipients being ineligible, the SBA failing to proactively identify and promptly respond to awards based on fraudulent and other suspicious activity.

In addition, the GAO report that the unobligated funds include $24 million set aside for litigation.  *Id.* at p. 14.  The SBA is supposed to follow the American Rescue Plan Act of 2021 ("ARPA") for the distribution of the RRF funds.  The APRA, however, does not authorize a $24 million litigation set aside for the SBA to administer.  Based on court decisions, the GAO report and other references, there is no evidence that the SBA has an appropriate and fair funding distribution mechanism or a revised distribution criteria in place, nonetheless, the GAO reported that "***SBA officials stated that it plans to continue to make awards until the remaining $180 million in program funder are spent***."  *Id.* at p. 55.

The decisions of *Vitolo* and *Blessed Cajuns* (addressed in detail below) expressly provide the "***government must show that it has completely and irrevocably eradicated the effects of the program's race and sex preferences***."  *Vitolo,* 999 F.3d 353, at 359 (emphasis added). The SBA has not demonstrated this.  Rather, in spite of its prior distribution protocol being deemed unconstitutional, the SBA has not released a revised written distribution plan for RRF recipients.  It has not issued any information as to the methodology of distribution, or any updates as to whether the queue will be reordered to account for the unconstitutionality of the prior distribution model.  Previously, the SBA had a 14-day processing window, so if these preferences are still in place, or if ineligible applicants are being funded, the $180 million may be depleted before the Plaintiffs' applications have even been processed.

For these reasons, Plaintiffs' counsel requested that SBA's counsel provide information to clarify the timing and protocol for the upcoming distribution.  However, SBA refused to provide

any information as to whether the SBA was currently making distributions, the revised distribution criteria that the SBA plans to use, or Plaintiffs' place in the queue of RRF applicants.

A substantial likelihood exists that the SBA may distribute the remaining $180 million of unobligated funds in violation of the Constitution of the United States of America, ARPA, and contrary to the GAO guidance. The fact is that the SBA could quickly disperse the funds and then the issues concerning using the correct methodology and applicants receiving distributions becomes moot. In order to ensure that the additional RRF funds are distributed in the future in a manner consistent with governing laws, Plaintiffs seek emergency, temporary and preliminary relief in the form a Temporary Restraining Order preserving the status quo, expedited discovery of Defendants' practices and process for processing applications to the remaining RRF funds, and a Preliminary Injunction enjoining Defendants from disbursing funds from the RRF pending trial and a final judicial determination of whether Defendants' process for applications and paying grants under the RRF is unconstitutional under the Sixth Circuit's decision in *Vitolo*.

## II.     RELEVANT FACTS

The facts set forth in the First Amended Complaint and Jury Demand (the "Amended Complaint") have been verified by the attached Declaration of Robert George. The Declaration also verifies the facts supporting this Motion.

### A.     Plaintiffs Are Restaurants That Have Been Significantly Impacted By The COVID-19 Pandemic.

Plaintiffs are restaurants and bars that have common ownership and operate in this District and beyond. (Amended Complaint at ¶¶ 13-26 and 40). As with other bars and restaurants, Plaintiffs' operations suffered greatly during the COVID-19 pandemic. (Amended Complaint at ¶94). Due to this significant financial impact, when the RRF opened, Plaintiffs filed applications within the first minutes of the opening. (Amended Complaint at ¶95).

B. **The Restaurant Revitalization Fund.**

Section 5003 of the American Rescue Plan Act ("ARPA") created the RRF, which established a $28.6 billion fund to support restaurants. ARPA, § 5003(b)(2). The RRF is administered by the SBA. The ARPA requires Defendants "to use amounts in the Fund to make grants" to restaurants impacted by "the uncertainty of current economic conditions." ARPA, § 5003(c)(2)(A)(i). The ARPA further required Defendants to impose race– and gender–based priorities while administering the fund. The law provides that during the "initial 21-day period in which the Administrator awards grants," Defendant is required to "prioritize grants to eligible entities that are small business concerns owned and controlled by women," veterans, or "socially and economically disadvantaged small business concerns." ARPA, § 5003(c)(3)(A).[3]

C. **Plaintiffs' Applications For RRF Funds.**

When the RRF opened, Plaintiffs filed applications within the first minutes of the opening. (Amended Complaint ¶95). Plaintiffs' applications fully complied with the non-race and sex-based criteria for distribution of the RRF funds. (Amended Complaint ¶96).

Aside from Summer House, Plaintiffs' majority owner, Robert George, is of Middle Eastern decent. (Amended Complaint ¶97). The SBA does not include Americans of Middle Eastern decent in the definition of "socially disadvantaged individuals" and "economically

---

[3] As background, the ARPA incorporates the Small Business Act's definitions of the terms "socially disadvantaged" and "economically disadvantaged." ARPA, § 5003(c)(3)(A). "Socially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." 15 U.S.C. § 637(a)(5). "Economically disadvantaged individuals are those socially disadvantaged individuals whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged." 15 U.S.C. § 637(a)(6)(A). In interpreting these definitions, SBA regulations further define "socially disadvantaged individuals" and "economically disadvantaged individuals" as those individuals who belong to certain racial and ethnic groups. 13 C.F.R. §§ 124.103, 104. Under these regulations, members of the following groups are presumed to be socially or economically disadvantaged: "Black Americans; Hispanic Americans; Native Americans (including Alaska Natives and Native Hawaiians); Asian Pacific Americans; or Subcontinent Asian Americans." *Id*.

disadvantaged individuals." (Amended Complaint at ¶98). Plaintiff Summer House has a majority owner who is a female, but Summer House was nonetheless denied RRF funds. (Amended Complaint at ¶99).

### D.    The RRF Funds Were Fully Disbursed Under An Unlawful Process.

Demand for RRF awards was immediate and overwhelming from priority and non-priority applicants alike. (Amended Complaint at ¶48). On May 5, 2021, SBA reported that it had received approximately 186,000 applications in two days from both priority and non-priority businesses. (Amended Complaint at ¶49). On May 18, 2021, SBA announced that it had received more than 303,000 applications, requesting over $69 billion in funds. (Amended Complaint at ¶50).

Due to overwhelming demand, claims on the RRF rapidly dwarfed the allocation of funds set aside by Congress and, accordingly, the SBA stopped accepting RRF applications on May 24, 2021. (Amended Complaint at ¶51). The SBA continued paying out RRF awards until June 30, 2021, at which point the Fund became exhausted. (Amended Complaint at ¶52). SBA announced on June 30, 2021, that the RRF had exhausted the $28.6 billion allocated to it by Congress and thus was closed. (Amended Complaint at ¶53).

### E.    Additional Funds Under the RRF Are Available To Be Disbursed.

Most recently, the SBA announced that $180 million of funding is available for distribution under the RRF. (Amended Complaint at ¶56). However, if the SBA distributes the RRF funds according to a process and protocol found in the Sixth Circuit's decision in *Vitolo* to violate the Constitution of the United States, then Plaintiffs have a grave risk of sustaining additional irreparable harm under the RRF. (Amended Complaint at ¶57).

### III.    ARGUMENT

Defendants have no justification for granting RRF funds based on race or gender. The Sixth Circuit has already held that the RRF preferential process was and is unlawful. As applicants for

4869-9187-1536.1 6

relief under the RRF, Plaintiffs have a legally protectable right and interest to ensure that the SBA's distribution process is constitutionally permissible.

### A. Standard of Review.

The purpose of a temporary restraining order "is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996).

In determining whether to grant a temporary restraining order or a preliminary injunction, the Court considers: (1) the likelihood of success on the merits; (2) irreparable harm absent injunctive relief; (3) substantial harm to others from the proposed injunction; and (4) the broader public interest." *Nat'l Credit Union Admin. Bd. v. Jurcevic*, 867 F.3d 616, 622 (6th Cir. 2017) (*citing Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994)).

At the preliminary injunction stage, a plaintiff "need not prove his case in full." *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (citations omitted). For purposes of a preliminary injunction, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997).

The four factors above "are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). But "[w]hen a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009).

**B.     Plaintiffs Make A Compelling Case That They Will Succeed On The Merits.**

The Sixth Circuit, in *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021), has already enjoined Defendants from allocating funds in the RRF in the manner ordered by Congress. *Id.* at 356. The *Vitolo* court addressed the issue of "whether the government can allocate limited coronavirus relief funds based on the race and sex of the applicants." *Id.* at 356. The Sixth Circuit held that the government cannot lawfully distribute funds in this manner and it enjoined the SBA from using these "unconstitutional criteria when processing" the plaintiff's application under the RRF. *Id.*

The *Vitolo* court reasoned that "[g]overnment policies that classify people by race are presumptively invalid." *Id.* at 360. To overcome that presumption of invalidity, the government must show that favoring one race over another is necessary to achieve a compelling state interest. However, even when the government can show that it has a compelling interest, it must narrowly tailor its remedy to advance that interest. This is a very demanding standard, which few programs will survive. The SBA conceded that the RRF had to withstand strict scrutiny because it grants privileges to individuals based explicitly on their race. *Id.* 360.

The *Vitolo* court held that the SBA lacked "a compelling interest in awarding Restaurant Revitalization Funds based on the race of the applicants" and, therefore, the policy's use of race violated equal protection. *Id.* 362. The *Vitolo* court further held that "the discriminatory disbursement of Restaurant Revitalization Funds is not narrowly tailored to further that interest." *Id.* 362. The *Vitolo* court's summary of the SBA's desire to divide Americans by race highlighted the unlawfulness of the SBA's disbursement of the RRF:

> The stark realities of the Small Business Administration's racial gerrymandering are inescapable. Imagine two childhood friends— one Indian, one Afghan. Both own restaurants, and both have suffered devastating losses during the pandemic. If both apply to the Restaurant Revitalization Fund, the Indian applicant will presumptively receive priority consideration over his Afghan friend. Why? Because of his ethnic heritage. It is indeed "a sordid business"

> to divide "us up by race." *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 511, 126 S. Ct. 2594, 165 L. Ed. 2d 609 (2006) (opinion of Roberts, C.J.). And the government's attempt to do so here violates the Constitution.

*Id.* at 364.

The ***government must show that it has completely and irrevocably eradicated the effects of the program's race and sex preferences***." *Vitolo,* 999 F.3d 353, at 359 (emphasis added). The SBA hasn't show this. The court in *Blessed Cajuns v. Guzman,* No. 4:2021cv00677 (N.D. Tex. May 28, 2021), held that even accepting as true that the "SBA has reordered its processing queue based on the time that applicants submitted their applications, the program's race and sex preference did not end with the priority phase." *Blessed Cajuns v. Guzman,* p. 8. '[A]ll of the 'priority' applications that were received [and were initiated for processing] in the 21-day windows are still being processed first. The immediate effects of the program's race and sex preferences are still present…" That remains true today. Here, akin to the reasoning in *Blessed Cajuns,* even if the SBA stops prioritizing applications on race and sex, it does not necessarily mean that the priority applications that were received [and were initiated for processing] in the 21-day window will not be processed first prior to non-priority applicants.

Nothing has materially changed since *Vitolo* and *Blessed Cajuns* decisions. Plaintiffs can firmly establish likelihood of success on the merits, which is the determinative factor for this Motion. *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009).

**C.** **The Remaining Factors Also Support Plaintiffs' Motion.**

The remaining three factors relevant to Plaintiffs' Motion are: (1) irreparable harm absent injunctive relief; (2) substantial harm to others from the proposed injunction; and (3) the broader public interest." *Nat'l Credit Union Admin. Bd. v. Jurcevic*, 867 F.3d 616, 622 (6th Cir. 2017)

4869-9187-1536.1  9

(*citing Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994)).  All of these factors are firmly in favor of Plaintiffs.

As to irreparable harm, the RRF was fully disbursed before the Sixth Circuit's decision in *Vitolo* could be implemented.  Likewise, Plaintiffs have asserted a claim for damages under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  However, as the SBA has secured or identified additional funds to allocate under the RRF, Plaintiffs (and other similarly-situated restaurants) would be irreparably harmed if their timely-filed applications for monetary relief under the RRF were not processed, as to the funds yet to be distributed, in a manner permissible under the United States Constitution.  Here, Plaintiffs are suffering a continuing and irreparable injury based on the direct, lingering effects of the race based, sex-based discriminatory application process.  If the Plaintiffs' applications are considered behind previous priority applicants, they will continue to suffer real and concrete injury.

Moreover, even putting aside the irreparable harm arising from deprivation of a fair, equal and neutral opportunity to obtain much-needed relief funds, a flagrant constitutional violation would itself constitute an irreparable harm.  Indeed, "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *Am. C.L. Union of Kentucky v. McCreary Cty., Kentucky*, 354 F.3d 438, 445 (6th Cir. 2003) ("[I]f it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated."); Wright & Miller, 11A Fed. Prac. & Proc. § 2948.1 (3d. ed.) ("When an alleged deprivation of a constitutional right is involved … most courts hold that no further showing of irreparable injury is necessary.").

In addition, if an injunction is issued, and Defendants are ordered to treat all applicants on a first-come, first-serve basis, no one will be injured. Plaintiffs only seek equal treatment under

the law, not special treatment. Even if some groups were to lose "priority period" status, they are losing a status unconstitutionally granted to them by Defendant. "[N]o substantial harm can be shown in the enjoinment of an unconstitutional policy." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004); *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 274 F.3d 377, 400 (6th Cir. 2001).

Finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge Inc. v. Mich. Liquor Control Comm.*, 23 F.3d 1071, 1079 (6th Cir. 1994). Indeed, "[t]he public interest is promoted by the robust enforcement of constitutional rights." *Am. Freedom Def. Initiative v. Suburban Mobility Authority for Reg'l Transp.*, 698 F.3d 885, 896 (6th Cir. 2012). This case is no different: Plaintiffs seek the simple vindication of equal treatment under law. This is surely in the public interest.

### IV.    CONCLUSION

Based on the above-cited arguments and authorities, Plaintiffs respectfully urge this Court to issue a temporary restraining order requiring Defendants to preserve the status quo by halting any disbursements or payments from the RRF fund pending expedited discovery of Defendants' practices under the RRF and a trial on Plaintiffs' motion seeking a preliminary injunction regarding whether the protocol and process for payment of RRF funds passes constitutional muster.

Respectfully submitted,

*/s/ Donald G. Slezak*
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street, Suite 2250
Cleveland, OH 44114
(216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
Donald.slezak@lewisbrisbois.com

and

Edward W. Hastie (0079438)
1258 Grandview Avenue, Suite B
Columbus, OH 43212
(614) 488-2800
ed@hastielegal.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of August 2022, the foregoing was filed through the Court's CM/ECF electronic filing system. If a Party should not receive a copy through the Court's filing system, a copy of the forgoing will be sent via email upon Plaintiff's counsel of record.

/s/ Donald G. Slezak
David A. Campbell (0066494)

*One of the Attorneys for Plaintiffs*