**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION**

| | |
|---|---|
| W6 RESTAURANT GROUP, LTD. et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ISABELLA CASILLAS GUZMAN et al.,<br><br>Defendants. | Civil Case No. 1:21-2361 |

**MEMORANDUM OF LAW SUPPORTING DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

KEVIN WYNOSKY
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 1

      A.      The history of the Restaurant Revitalization Fund. ................................................. 1

      B.      Governmental oversight of potential RRF fraud. ................................................... 3

      C.      Procedural History ................................................................................................. 4

LEGAL STANDARDS ....................................................................................................... 6

ARGUMENT ...................................................................................................................... 6

I.      The Court should dismiss the Third Amended Complaint for lack of subject-matter jurisdiction. ......................................................................................................... 8

      A.      Plaintiffs lack standing to compel SBA to prosecute RRF fraud............................ 8

      B.      Plaintiffs cannot manufacture standing by speculating that allegedly fraudulent RRF awards will be recovered or that any recovery would cover their requested amounts. ............................................................................ 10

      C.      Plaintiffs' claims are moot because the covered period ended and because Congress rescinded any remaining RRF money. .................................................. 11

II.      The Court should dismiss the Third Amended Complaint for failure to state a claim.  12

      A.      The Court cannot review Plaintiffs' unresolved RRF applications. ..................... 13

      B.      In all events, SBA's handling of Plaintiffs' applications did not constitute legal error. ......................................................................................................... 15

      C.      The APA does not authorize Plaintiffs' requested specific relief........................ 17

CONCLUSION.................................................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**

*1800 Michigan Ave. v. SBA,*
No. 2:22-10377, 2022 WL 2916677 (E.D. Mich. July 25, 2022) ........................................ 20

*Ailor v. City of Maynardville,*
368 F.3d 587 (6th Cir. 2004) ................................................................................ 11

*Arizona v. Biden,*
40 F.4th 375 (6th Cir. 2022) ................................................................................ 19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................ 6

*Bennett v. Spear,*
520 U.S. 154 (1997) ................................................................................................ 14

*Brandywine, Inc. v. City of Richmond,*
359 F.3d 830 (6th Cir. 2004) ......................................................................... 16, 17

*California v. Texas*
141 S. Ct. 2104 (2021) ............................................................................................ 19

*Cartwright v. Garner,*
751 F.3d 752 (6th Cir. 2014) .................................................................................. 6

*Chef Time 1520 LLC v. Small Bus. Admin.,*
646 F. Supp. 3d 101 (D.D.C. 2022).................................................................. 17, 18

*Cissel Mfg. Co. v. U.S. Dep't of Labor,*
101 F.3d 1132 (6th Cir. 1996) ............................................................................... 18

*Cobell v. Kempthorne,*
455 F.3d 301 (D.C. Cir. 2006) ............................................................................... 14

*Fanin v. U.S. Dep't of Veterans Affairs,*
572 F.3d 868 (11th Cir. 2009) ............................................................................... 14

*Fed. Power Comm'n  v. Idaho Power Co.,*
344 U.S. 17 (1952) ................................................................................................ 18

*Franklin v. Massachusetts,*
505 U.S. 788 (1992) ................................................................................................ 15

*Greer's Ranch Café v. Guzman,*
540 F. Supp. 3d 638 (N.D. Tex. 2021) ..................................................................... 2

*Heckler v. Chaney,*

470 U.S. 821 (1985) ........................................................................................... 8, 9

*ICC v. Bhd. of Locomotive Eng'rs*,
　482 U.S. 270 (1987) ......................................................................................... 8

*In re Fed. Bureau of Prisons' Execution Protocol Cases*,
　980 F.3d 123 (D.C. Cir. 2020) ....................................................................... 18

*In re Perrigo Co.*,
　128 F.3d 430 (6th Cir. 1997) .......................................................................... 13

*Infidels, LLC v. Guzman*,
　No. 3:22-391, 2023 WL 5599605 (M.D. Tenn. Aug. 29, 2023) ................. 17, 19

*Judge Rotenberg Educ. Ctr., Inc. v. FDA*,
　3 F.4th 390 (D.C. Cir. 2021) ......................................................................... 16

*Keener v. United States,*
　No. 2:22-1640, 2023 WL 2478367 (D.S.C. Mar. 13, 2023) ......................... 20

*King v. Burwell*,
　576 U.S. 473 (2015) ......................................................................................... 7

*Kingsley Rests., Inc. v. U.S. SBA,*
　No. 1:21-2314, 2021 WL 8441778 (N.D. Ga. Aug. 24, 2021) ...................... 11

*Lujan v. Nat'l Wildlife Fed'n*,
　497 U.S. 871 (1990) ................................................................................. 14, 15

*Marshall Cnty. Health Care Auth. v. Shalala*,
　988 F.2d 1221 (D.C. Cir. 1993) ..................................................................... 12

*MC Mgmt. of Rochester LLC v. Biden,*
　No. 6:22-6337, 2023 WL 4194771 (W.D.N.Y. June 27, 2023) .................... 20

*Michigan v. United States*,
　994 F.2d 1197 (6th Cir. 1993) ....................................................................... 14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
　463 U.S. 29 (1983) ......................................................................................... 13

*Mt. Emmons Mining Co. v. Babbitt*,
　117 F.3d 1167 (10th Cir. 1997) ..................................................................... 12

*Norton v. S. Utah Wilderness All.*,
　542 U.S. 55 (2004) .............................................................................. 12, 14, 15

*Palisades Gen. Hosp. Inc. v. Leavitt*,
　426 F.3d 400 (D.C. Cir. 2005) .................................................................. 15, 18

*Pleasant View Baptist Church v. Beshear*,

838 F. App'x 936 (6th Cir. 2020) ................................................................ 16

*Reboot Macon, LLC v. United States,*
No. 5:21-221, 2023 WL 4672395 (M.D. Ga. July 20, 2023) ................................. 7, 11, 12, 15

*Smith v. Bd. of Tr. Lakeland Comm. Coll.,*
746 F. Supp. 2d 877 (N.D. Ohio 2010) ............................................................. 2, 3

*Stalley v. Methodist Healthcare,*
517 F.3d 911 (6th Cir. 2008) ........................................................................ 10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
551 U.S. 308 (2007) .................................................................................... 3

*United States v. Mead Corp.,*
533 U.S. 218 (2001) .................................................................................. 17

*United States v. Texas*
143 S. Ct. 1964 (2023).......................................................................... 6, 9, 10

*Vill. of Bald Head Island v. Army Corp. of Eng'rs,*
714 F.3d 186 (4th Cir. 2013) ....................................................................... 14

*Vitolo v. Guzman,*
999 F.3d 353 (6th Cir. 2021) .............................................................. 2, 18, 20

*Wayte v. United States,*
470 U.S. 598 (1985) .................................................................................... 9

*Whitmore v. Arkansas,*
495 U.S. 149 (1990) .................................................................................... 7

**Statutes**

5 U.S.C. § 551 ........................................................................................ 14
5 U.S.C. § 554 .......................................................................................... 8
5 U.S.C. § 702 .......................................................................................... 7
5 U.S.C. § 704 ...................................................................................... 7, 13
5 U.S.C. § 706 ........................................................................................ 12
15 U.S.C. § 9009c ............................................................................. *passim*
28 U.S.C. § 1291 ..................................................................................... 13
Pub. L. No. 118-5, 137 Stat. 10 ...................................................................... 3

**Other Authorities**

Consolidated Appropriations Act, 2023, Public Law 117-328,
*available at* https://perma.cc/B49H-AMHX ...................................................... 7

Gov't Accountability Off., *Principles of Federal Appropriations Law* (4th ed 2016),
   https://perma.cc/WHS4-5STU ................................................................................ 7

Press Release No. 21-33 (Apr. 27, 2021),
   https://perma.cc/2XUG-4ZXL ................................................................................ 3

*Receive*,
   American Heritage Dictionary of the English Language (5th ed. 2022) ............................... 17

*Receive*,
   Oxford English Dictionary (3d ed. 2009) ................................................................ 17

*Receive*, Merriam Webster Online,
   https://perma.cc/CBU5-A63Y ................................................................................ 17

U.S. Gov't Accountability Off., *Restaurant Revitalization Fund: Opportunities Exist to Improve Oversight* 55-57 (July 2022),
   https://perma.cc/VA2S-QD7R ................................................................................ 3

v

**INTRODUCTION**

This case concerns the Restaurant Revitalization Fund (RRF), a $28.6 billion fund created by Congress and overseen by the Small Business Administration to help restaurants hurt by the COVID-19 pandemic. Plaintiffs are fifteen businesses that unsuccessfully applied for RRF awards but believe they might receive funding if SBA recovers fraudulent awards and redistributes the recovered money as new awards.

Yet Plaintiffs' theory runs into two jurisdictional problems. *First*, Plaintiffs lack standing to compel the Executive Branch to take enforcement actions against violators of federal law. Plaintiffs also cannot assert standing based on speculation that SBA would successfully recover enough fraudulent RRF awards to cover their awards.

*Second*, Plaintiffs' attempt to obtain new RRF awards is moot. As Plaintiffs concede, Congress required all RRF awards to be used before March 11, 2023. Then, on June 3, 2023, Congress rescinded any and all remaining RRF funds as part of the Fiscal Responsibility Act. So even if SBA did recover fraudulent RRF awards, any recovered money would have to be returned to the Treasury—not distributed to Plaintiffs.

Alternatively, even if the Court had jurisdiction, the Third Amended Complaint would fail on the merits. The Third Amended Complaint seeks review under the Administrative Procedure Act, but the challenged agency action is not reviewable. Nor can Plaintiffs establish legal error in all events. But even if Plaintiffs could establish legal error, the solution would be for the Court to remand to the agency; the APA does not authorize the specific relief requested by Plaintiffs.

The Court should dismiss the Third Amended Complaint for lack of subject-matter jurisdiction or for failure to state a claim.

**BACKGROUND**

**A.    The history of the Restaurant Revitalization Fund.**

The story of the RRF begins and ends with Congress. It begins with the American Rescue Plan Act, which Congress enacted on March 11, 2021. *See* Public Law 117-2, 135 Stat. 4; *see also* TAC ¶ 24. Section 5003 (later codified at 15 U.S.C. § 9009c) established the fund and appropriated

$28.6 billion "to remain available until expended." 15 U.S.C. § 9009c(b)(1)–(2)(A). Congress also set various eligibility criteria for recipients, restricted the potential uses for awards, and required recipients to use their awards "[d]uring [a] covered period" ending no later than March 11, 2023. *Id.* § 9009c(c)(5); *see id.* § 9009c(a)(3)(B) & (a)(4); *see also* TAC ¶¶ 26–31. If a recipient failed to use its entire award before the covered period ended, Congress required the recipient to return any unused funds to the Treasury. *See id.* § 9009c(c)(6). Congress also required SBA to "prioritize awarding grants to eligible entities that are" either "small business concerns owned and controlled by women," "small business concerns owned and controlled by veterans," or "socially and economically disadvantaged small business concerns"—a term defined by statute—for the first twenty-one days. *Id.* § 9009c(c)(3)(A); *see* TAC ¶ 33.[1] After the first twenty-one days, Congress directed SBA to "award grants to eligible entities in the order in which applications [we]re received by the Administrator." *Id.* § 9009c(c)(1); *see* TAC ¶ 32.

SBA accepted RRF applications through an online portal from May 3 to May 24, 2021. *See* TAC ¶¶ 34, 37. During this period, demand was immediate and overwhelming: two days in, SBA had received 186,000 applications; by the two-week mark, SBA had received 303,000 applications. *See* TAC ex. A ¶¶ 6–7.[2] Given § 9009c(c)(1)'s command to only "award grants to eligible entities," SBA processed each application before funding the award to confirm the applicant's eligibility and to ensure that the amount requested was not fraudulent. *See id.* ¶ 9. SBA began processing applications in the order they were filed; once SBA fully approved an application (the penultimate processing step), SBA booked it for payment (the final step). *See id.* ¶¶ 8–9. On July 2, 2021, SBA closed the RRF because all $28.6 billion was obligated. *See* TAC ¶ 41.

---

[1] A divided motions panel of the U.S. Court of Appeals for the Sixth Circuit later concluded that this twenty-one-day priority for small business concerns owned and controlled by women and for socially and economically disadvantaged small business concerns likely violated the Fifth Amendment's equal-protection guarantee. *See Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021). A district judge in the Northern District of Texas reached the same conclusion in two other cases. *See Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638 (N.D. Tex. 2021); Order, *Blessed Cajuns LLC v. Guzman*, No. 4:21-677 (N.D. Tex. May 28, 2021) (ECF No. 18). *See generally* TAC ¶ 39.

[2] *See generally Smith v. Bd. of Tr. Lakeland Comm. Coll.*, 746 F. Supp. 2d 877, 889 (N.D. Ohio 2010) ("In ruling on a motion to dismiss, a court may consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice.").

After that announcement, roughly $83 million became available for new RRF awards. *See* TAC ex. A ¶¶ 16–17. So SBA arranged all fully approved applicants in order based on the time-stamped signature on their applications. *See id.* ¶ 17. Ultimately, the first 169 eligible applicants in submission order were designated to receive the $83 million; the 169th eligible applicant had signed its application just before 1:20 PM ET on May 3, 2021. *See id.* ¶ 18.

On February 23, 2023, SBA distributed the last of the $83 million. *See* ECF No. 73-1 ¶ 4. Sixteen days later, on March 11, 2023, the covered period expired. *See* 15 U.S.C. § 9009c(a)(3)(B) (giving the SBA Administrator authority to extend the covered period up to March 11, 2023); Press Release No. 21-33 (Apr. 27, 2021), https://perma.cc/2XUG-4ZXL (exercising that authority).[3] At that point, § 9009c(c)(6) required recipients to return any unused funds to the Treasury.

The story of the RRF ends with the Fiscal Responsibility Act, which became law on June 3, 2023. *See* Pub. L. No. 118-5, 137 Stat. 10. As part of a bipartisan agreement to suspend the public debt limit through January 1, 2025, the law rescinded unobligated funds from at least eighty-one different federal programs, including the RRF. *See id.* § 52, 137 Stat. at 28 ("The unobligated balances of amounts made available by section 5003(b)(2)(A) of Public Law 117-2 are hereby permanently rescinded.").

**B.    Governmental oversight of potential RRF fraud.**

Two oversight entities have issued reports about potential RRF fraud: the Government Accountability Office and the SBA Inspector General. The GAO issued its report in July 2022, a few months before SBA began distributing the $83 million. Although GAO recommended seven best practices "to proactively identify fraudulent or ineligible award recipients," GAO identified low rates of RRF fraud. *See* U.S. Gov't Accountability Off., *Restaurant Revitalization Fund: Opportunities Exist to Improve Oversight* 55-57 (July 2022), https://perma.cc/VA2S-QD7R. In fact, GAO praised SBA for "expeditiously implement[ing] RRF and us[ing] lessons learned from previous emergency programs (such as [the Paycheck Protection Program]) to improve program

---

[3] The Court may take judicial notice of factual information available on government websites. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007).

3

design and increase safeguards." *Id.* at 55. GAO noted that SBA utilized "automated and manual controls to screen applicants" that were "consistent with some leading practices" and "focus[ed] on fraud prevention." *Id.* at 31. GAO also observed that those screening controls prevented awarding over 31,000 potentially fraudulent applications. *See id.* at 17; *see also id.* at 41 (noting that SBA "received few complaints about RRF through its fraud hotline"); *cf. id.* at 54 (SBA data flagged fewer than 400 RRF awards for potential fraud). Against that backdrop, SBA explained its decision to prioritize "preventing the flagged recipients from receiving additional SBA funds" rather than asking awardees to return every "improper [RRF] payment." *Id.* at 54.

The SBA IG likewise identified low RRF fraud rates in an inspection report issued in July 2023 (roughly a month after the Fiscal Responsibility's enactment). *See* ECF No. 84-1. Of the approximately 101,000 applications that SBA funded, the IG learned that 2,172 applications (roughly 2.2%) did not contain all the required information, and that 110 of these applications (roughly 0.1% of the total) bore "indicators of potential fraud." *Id.* at 2. The IG recommended— and SBA agreed—to review those 2,172 applications and to "take appropriate administrative actions to recover" any "improper payments." *Id.* But nothing in the IG's report suggests that any recovered funds could be turned into new RRF awards; in fact,  under 15 U.S.C. § 9009c(c)(6) and the Fiscal Responsibility Act, any funds recovered must go to the Treasury.

## C.   Procedural History

All told, although SBA funded over one hundred thousand RRF applicants, hundreds of thousands more were unsuccessful—including these fifteen Plaintiffs. Plaintiffs' application times vary considerably, but each Plaintiff missed the May 3, 2021 1:20 PM ET cut-off for the $83 million. For instance, the first Plaintiff to apply was Star Bar & Grill, Inc., which filed its application at 2:47 PM ET on May 3, 2021. *See* ECF No. 66-2 ¶ 9. Other Plaintiffs did not apply for several days—for instance, Summer House, LLC did not apply until 4:32 PM ET on May 5, 2021. *See id.* Still others waited weeks to apply—like Westerville Restaurant Group, LLC, which did not apply until 10:31 PM ET on May 23, 2021. *See id.*

4

Plaintiffs filed suit in December 2021. Their original Complaint sought individual-capacity monetary damages from various SBA employees who implemented Congress's directive to prioritize certain applications for the first twenty-one days. *See* ECF No. 1. Eight months later, in August 2022, Plaintiffs filed a First Amended Complaint adding claims against the SBA Administrator and a senior SBA official in their official capacities. *See* ECF No. 30. Around the same time, Plaintiffs unsuccessfully sought emergency preliminary relief, *see* Docket Entry dated 8/29/2022, and SBA moved to dismiss the First Amended Complaint, *see* ECF No. 45.

Three weeks after SBA moved to dismiss the First Amended Complaint, Plaintiffs moved for leave to file a Second Amended Complaint. *See* ECF No. 47. And two weeks after that, Plaintiffs filed another motion for leave proposing a different Second Amended Complaint. *See* ECF No. 50. The Court granted the latter motion, *see* Docket Entry dated 12/07/2022, and SBA moved to dismiss the operative Second Amended Complaint, *see* ECF No. 66.

A few weeks after SBA's motion to dismiss the Second Amended Complaint became ripe for decision, Plaintiffs moved for leave to file a Third Amended Complaint. *See* ECF No. 74. The Court allowed Plaintiffs to file a Third Amended Complaint but cautioned that "[t]his is Plaintiffs' last opportunity to amend." ECF No. 85 at 2. The Court also noted that "the R[R]F program closed" "[o]n March 11, 2023," and made clear that it was not passing on SBA's arguments that the Plaintiffs' claims were moot or legally insufficient. *Id.*

The Third Amended Complaint alleges that SBA never processed Plaintiffs' RRF applications to full approval. *See* TAC ¶ 68. Yet now that "the covered period" has "expir[ed]," Plaintiffs contend that their applications should be deemed "de facto denied." *Id.* ¶ 70. Count I claims that this "de facto denial" constituted arbitrary and capricious agency action and asks the Court for review under the APA. *See id.* ¶¶ 78–86. Count II similarly seeks review of SBA's alleged "fail[ure] to develop and implement policies and procedures *** to address and recover" fraudulently procured or used "RRF grants." *See id.* ¶¶ 87–92.

As a remedy, Plaintiffs ask the Court to "compel[]" SBA to act "without regard for the program termination date" specified by Congress. *Id.* at 18. Rather, because Plaintiffs believe that

5

"[a]ny recovered RRF funds" would "still" be "'available,'" *id.* ¶ 91, Plaintiffs urge the Court to order SBA to "continue processing all pending applications," to "develop and implement policies for the return of" fraudulent awards, to "enforce provisions *** mandat[ing] RRF funds in specified circumstances be returned," and to "use the returned funds to award eligible RRF grant recipients in the order in which they applied." *Id.* at 18. Plaintiffs also ask the Court to "enjoin[]" SBA from "closing the RRF program *** until all applications are officially processed" and "all funds improvidently granted or unused *** are returned to the RRF *and* redistributed." *Id.* (emphasis in original). Finally, Plaintiffs ask for the Court to install itself as a judicial monitor over the RRF. *See id.* (asking the Court to "require Defendants submit [sic] periodic certification of ongoing actions consistent with the Court's order" and "to reform[ ] the processing, approval, and/or payment protocols of the SBA to conform to the constitutional and statutory requirements").

## LEGAL STANDARDS

Rule 12(b)(1) tests a Court's subject-matter jurisdiction, either over specific claims or over entire actions. "A Rule 12(b)(1) motion *** can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "In the case of a factual attack," the court "has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759-60.

Rule 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

The Court should dismiss the Third Amended Complaint for lack of subject-matter jurisdiction. Plaintiffs' entire theory depends on SBA successfully recovering fraudulent RRF awards. But Plaintiffs lack standing to compel "the Executive Branch to take enforcement actions against violators of federal law." *United States v. Texas*, 143 S. Ct. 1964, 1975 (2023). And in any

6

event, predicting that separate proceedings will result in a particular outcome "is too speculative to invoke Art[icle] III jurisdiction." *Whitmore v. Arkansas*, 495 U.S. 149, 150 (1990).

Besides standing, the Third Amended Complaint runs into another jurisdictional hurdle: mootness. Another court recently held that the covered period's expiration moots APA review of the RRF, and this Court should do the same. *See Reboot Macon, LLC v. United States*, No. 5:21-221, 2023 WL 4672395, at *5 (M.D. Ga. July 20, 2023). Even Plaintiffs concede that "the [RRF] program end[ed]" on "March 11, 2023," but they latch onto a different provision in an attempt to resurrect their claims: boilerplate appropriations language included in 15 U.S.C. § 9009c(b)(2)(A) noting that the $28.6 billion "remain[s] available until expended."[4] *See* TAC ¶¶ 59, 90–92. As an initial matter, Plaintiffs cannot cherry-pick statutory provisions for the Court to disregard; courts "construe statutes, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 486 (2015). And in all events, under the subsequently enacted Fiscal Responsibility Act, the $28.6 billion appropriation is no longer available. Put differently, even if SBA prosecuted RRF fraud, any recovered money could not be used to fund new awards.

The Court should also dismiss the Third Amended Complaint for failure to state a claim. Plaintiffs correctly note that the APA entitles "[a] person suffering legal wrong because of [final] agency action *** to judicial review thereof." TAC ¶ 75 (alteration in original) (quoting 5 U.S.C. § 702); 5 U.S.C. § 704. Yet the thing Plaintiffs challenge—the "de facto deni[al]" of "Plaintiffs' applications" "[w]ith the expiration of the covered period," TAC ¶ 81—is not final agency action. Nor could it be described as legal error. But even if Plaintiffs could find legal error in SBA's handling of Plaintiffs' applications, the APA forbids the specific relief that Plaintiffs request.

---

[4] In appropriations bills, the phrase "to remain available until expended" indicates a "no-year appropriation"—"an appropriation available for obligation for an indefinite period"—rather than the alternative, which is an appropriation available only during a specific fiscal year or years. *See* Gov't Accountability Off., *Principles of Federal Appropriations Law* at 2-9 (4th ed 2016), https://perma.cc/WHS4-5STU. For context, in the most recent federal budget, the phrase "to remain available until expended" appears 443 times. *See* Consolidated Appropriations Act, 2023, Public Law 117-328, *available at* https://perma.cc/B49H-AMHX.

**I.**   **The Court should dismiss the Third Amended Complaint for lack of subject-matter jurisdiction.**

Plaintiffs' theory of recovery builds from three foundational premises: *first*, that the Court can order SBA to prosecute RRF fraud; *second*, that SBA's prosecution would successfully recover fraudulent RRF awards; and *third*, that the recovered funds could be used to fund their RRF awards. Each premise must be true for the Court to grant Plaintiffs meaningful relief. Yet basic tenets of Article III negate the first two premises, and Congress has blocked the third. So the Court must dismiss the Third Amended Complaint for lack of subject-matter jurisdiction.

**A.**   **Plaintiffs lack standing to compel SBA to prosecute RRF fraud.**

The Court cannot compel SBA to investigate and prosecute RRF fraud. "[A]n agency's decision not to prosecute or enforce *** is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Or put differently, decisions about whether "to institute proceedings" fall within "the special province of the Executive Branch" that the Judiciary cannot invade. *Id.* at 832. "[I]t is entirely clear that the refusal to prosecute cannot be the subject of judicial review." *ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987). *See also* 5 U.S.C. § 554(d) (agency attorneys bringing civil enforcement actions serve in "prosecuting functions").

To be sure, the Supreme Court has permitted judicial review of agency nonenforcement in two limited contexts: when "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers" or when "the agency has consciously and expressly adopted a general policy that is so extreme as to amount to an abdication of its statutory responsibilities." *Heckler*, 470 U.S. at 833 & n.4. But neither exception allows courts to compel an enforcement action contrary to an agency's reasonable decision about resource allocation. At bottom, agencies have the prerogative to "not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all." *Id.* at 831. After all, "[a]n agency generally cannot act against each technical violation of the

8

statute it is charged with enforcing," and "[t]he agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* at 831-32; *see also Wayte v. United States*, 470 U.S. 598, 607 (1985) ("[T]he decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.").

The Supreme Court recently applied this principle in *United States v. Texas*, a case challenging new Department of Homeland Security guidelines for immigration enforcement. *See* 143 S. Ct. 1964. DHS's new guidelines prioritized arresting and removing "noncitizens who are suspected terrorists or dangerous criminals, or who have unlawfully entered the country only recently." *Id.* at 1968. Texas and Louisiana challenged the guidelines under the APA, alleging that the guidelines contravened two other statutes purportedly requiring DHS to arrest other categories of noncitizens pending their removal. *See id.* at 1968-69. The States sought a judicial order compelling DHS "to alter its arrest policy so that [DHS] arrests more noncitizens." *Id.* at 1969-70. But citing decades of "precedents and longstanding historical practice"—"in both Article III cases and Administrative Procedure Act cases"—the Supreme Court reaffirmed that "a plaintiff lacks standing" to challenge "the Executive Branch's exercise of enforcement discretion." *Id.* at 1970-72. As the Court explained, such claims raise separation-of-powers concerns, because it is the Executive's job "to decide how to prioritize and how aggressively to pursue legal actions." *Id.* at 1971. Courts also "generally lack meaningful standards" to assess the Executive's "complicated balancing" of "inevitable resource constraints and regularly changing *** public-welfare needs." *Id.* at 1972.

Just as the plaintiff States in *Texas* lacked standing to compel DHS's arrest and removal priorities, these Plaintiffs lack standing to compel SBA's fraud prosecution priorities. Put simply, requiring SBA to investigate and prosecute additional RRF fraud would interfere in SBA's reasonable resource allocation decisions, particularly given the significant and pressing demands

9

that other COVID-19 relief programs imposed on SBA. As the GAO report noted (at 54), SBA built substantial fraud-prevention controls into the RRF application and prioritized "preventing [any] flagged recipients from receiving additional SBA funds" rather than asking awardees to return every "improper [RRF] payment." The Court lacks jurisdiction to compel SBA to redirect its limited resources to chasing every allegedly improperly procured or used RRF award.

A closing point merits emphasis: although Article III blocks Plaintiffs from using litigation to commandeer SBA's enforcement discretion, Plaintiffs retain alternate forums to argue that SBA inadequately pursued RRF fraud. Like the plaintiff States in *Texas*, Plaintiffs can turn to Congress—which "possesses an array of tools to analyze and influence" SBA's fraud prosecution priorities. 143 S. Ct. at 1975. Plaintiffs can also seek to "hold elected officials to account for enforcement decisions" through "elections." *Id.* at 1975. But as to "whether the Federal Judiciary may in effect order the Executive Branch to take enforcement actions against violators of federal law," "the answer is no." *Id.*

> **B. Plaintiffs cannot manufacture standing by speculating that allegedly fraudulent RRF awards will be recovered or that any recovery would cover their requested amounts.**

Although Plaintiffs' inability to compel SBA to prosecute alleged RRF fraud logically eclipses Plaintiffs' downstream presumption that any prosecution would result in the return of sufficient funds to enable SBA to award their applications, it remains legally true that the Plaintiffs cannot speculate their way to standing. Basic standing doctrine requires "a substantial likelihood, as opposed to mere speculation, that a favorable decision *** will redress [Plaintiffs'] alleged injury." *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). Yet the Third Amended Complaint rests on two levels of speculation: *first*, that an order directing SBA to recover RRF fraud will yield any money at all, and *second*, that any recovery would be sufficient to cover Plaintiffs' awards as opposed to other applicants in the queue. The latter is especially dubious, given how little RRF fraud occurred, and how relatively late within the application period some Plaintiffs applied. *See supra* at 3-4. The bottom line is that Plaintiffs cannot pile speculation upon speculation to invoke this Court's jurisdiction.

10

In a different RRF case, a district court held that a plaintiff's "offhand suggestion that the RRF may obtain more funding in the future through either audits or future Congressional allocations [] fails to establish the existence of a live case or controversy" once the RRF "r[u]n[s] out of money to allocate." *Kingsley Rests., Inc. v. U.S. SBA*, No. 1:21-2314, 2021 WL 8441778, at *3 (N.D. Ga. Aug. 24, 2021). As that court concluded, "[t]hat the RRF may be refunded is entirely speculative," and unsuccessful RRF applicants cannot presume otherwise to obtain standing. *Id.* This Court should reach the same conclusion, and likewise dismiss this case.

### C. Plaintiffs' claims are moot because the covered period ended and because Congress rescinded any remaining RRF money.

Another basic jurisdictional point requires that "[i]f events that occur subsequent to the filing of a lawsuit *** deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed." *Ailor v. City of Maynardville*, 368 F.3d 587, 596 (6th Cir. 2004). Here, two events make it impossible for the Court to grant meaningful relief: the covered period's expiration and the Fiscal Responsibility Act. In essence, no matter what the Court orders, no additional funds remain available for new awards.

*First*, the covered period expired. As another district court recognized, given "the plain language of [15 U.S.C. § 9009c(c)(6)] which says that any funds not used during the covered period *shall* be returned to the Treasury," APA claims challenging SBA's failure to fund an RRF award "bec[a]me non-redressable" once the covered period expired. *Reboot Macon*, 2023 WL 4672395, at *5. Simply put, even if a plaintiff prevailed on its APA claim, because the covered period ended, the plaintiff "would have to immediately return any RRF funds that SBA hypothetically awarded"; a court cannot "tack on a carve-out to § 9009c(c)(6)" for "cases where the SBA [allegedly] bungled the processing of the eligible entity's claims." *Id.* So "the expiration of the statutory covered period moots the plaintiffs' claims." *Id.* at *4 (cleaned up). That conclusion applies with equal force to these Plaintiffs.

*Second*, the Fiscal Responsibility Act "permanently rescinded" any "unobligated balances of" the $28.6 billion "made available by" 15 U.S.C. § 9009c(b)(2)(A). 137 Stat. at 28. So

11

Plaintiffs' central theory—that "[a]ny recovered RRF funds are still 'available' for purposes of the statute," TAC ¶ 91—falls flat. Even if SBA recovers fraudulent awards, that money no longer remains "available." In short, SBA no longer has legal authority to issue RRF awards.

Individually—and especially collectively—the upshot of these two developments means that the Court cannot order the relief sought by Plaintiffs. As a legal matter, SBA has no appropriation authority for new awards, nor could recipients even use an award: any theoretical award would have to immediately go to the Treasury. So in addition to Plaintiffs' lack of standing, the Court should dismiss the Third Amended Complaint as moot.

## II. The Court should dismiss the Third Amended Complaint for failure to state a claim.

The Third Amended Complaint seeks review of the RRF under the APA. When reviewing challenges to agency action under the APA, a "district court sits as an appellate tribunal." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1225 (D.C. Cir. 1993). In general, the appellate relationship between a district court and an agency under the APA parallels the familiar appellate relationship between a court of appeals and a district court.

Just as courts of appeals can compel district courts to act by issuing a writ of mandamus in extraordinary circumstances, 5 U.S.C. § 706(1) allows district courts to compel an agency to take an action that has been unlawfully withheld or unreasonably delayed. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (noting that § 706(1) covers only "ministerial or non-discretionary act[s]"); *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997) (an order under § 706(1) is "essentially in the nature of mandamus relief"). Next, just as courts of appeals can vacate and remand district court orders upon finding reversible error, § 706(2) allows district courts to "set aside agency action" found to be unlawful or unreasonable—in APA-speak, "arbitrary and capricious"—and remand it to the agency. But just as courts of appeals apply particular standards of review to district court orders, the Supreme Court has prescribed a standard of review for agency actions challenged as arbitrary and capricious. The standard is "narrow"; "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S.,*

*Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Rather, agency action should be set aside only

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* Finally, just as 28 U.S.C. § 1291 generally limits courts of appeals to reviewing final district court orders, 5 U.S.C. § 704 limits district courts to reviewing final agency action.

The Third Amended Complaint does not fit within this established framework. Plaintiffs have not justified any need for mandamus relief under § 706(1). *See generally In re Perrigo Co.*, 128 F.3d 430, 435 (6th Cir. 1997) (explaining the "extraordinary" requirements for mandamus relief). And just as a district court litigant cannot petition a court of appeals to review undecided district court cases, Plaintiffs also cannot ask this Court to review unresolved RRF applications under § 706(2). Yet even the "errors" that Plaintiffs purport to identify in SBA's handling of their applications do not run afoul of § 706(2)'s deferential standard of review. Finally, just as a court of appeals cannot commandeer the day-to-day management of a district court case, this Court cannot issue specific relief superintending SBA's authority to administer the RRF in the first instance. All told, the Third Amended Complaint fails to state a viable APA claim.

### A. The Court cannot review Plaintiffs' unresolved RRF applications.

The Third Amended Complaint purports to seek review of Plaintiffs' unresolved RRF applications. But the fact that fifteen entities, with different business models and ownership structures, seek to jointly challenge SBA's handling of their RRF applications—which were all submitted at different times, and have never been approved or denied—reveals that Plaintiffs bring an impermissible programmatic challenge seeking wholesale review of SBA's administration of the RRF.

"[I]t is *** entirely certain that the flaws in [an] entire 'program' *** cannot be laid before the courts for wholesale correction under the APA." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

13

873 (1990); *see also id.* at 891 (noting that APA plaintiffs "cannot seek wholesale improvement of [a government] program by court decree"). Rather, courts can review only the specific actions delineated in 5 U.S.C. § 551(13): "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Norton*, 542 U.S. at 62 (emphasis omitted); *id.* at 64 ("The limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan*."). And to be ripe for review, the discrete action must also represent "the 'consummation' of the agency's decisionmaking process" by which "rights or obligations have been determined" or from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). In sum, "[w]ith respect to agency action and the traditional role of the courts" under the APA, plaintiffs cannot "police" federal agencies "to ensure" that laws "are followed" in the abstract. *Michigan v. United States*, 994 F.2d 1197, 1203-04 (6th Cir. 1993). Rather, courts "intervene in the administration of the laws only when, and to the extent that, a specific 'final agency action' has an actual or immediately threatened effect." *Id.*[5]

Plaintiffs do not even dispute the programmatic nature of their challenge. While opposing SBA's prior motion to dismiss the Second Amended Complaint, Plaintiffs alleged that "[t]he administration of the RRF thus far has been riddled with problems," admitted that they "are seeking a review of the SBA's administration of the RRF," and argued that the APA "entitle[s]" them "to a determination of whether the SBA *** properly administered the RRF." ECF No. 71 at 13, 17. But the APA entitles them to no such thing, not least because Plaintiffs have not pointed to a "circumscribed, discrete agency action" for the Court to review. *Norton*, 542 U.S. at 62 (emphasis omitted); *see also Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (rejecting the argument that "the scope of relief" under the APA "is a judicial determination").

---

[5] Other Circuits agree. *See, e.g.*, *Vill. of Bald Head Island v. Army Corp. of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) ("The term 'action' as used in the APA is a term of art that does not include all conduct such as, for example, *** operating a program."); *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 876 (11th Cir. 2009) ("Broad programmatic attacks against agencies are not permissible under the APA."); *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006) ("Because 'an ongoing program or policy is not, in itself, a final agency action under the APA, our jurisdiction does not extend to reviewing generalized complaints about agency behavior. Consequently, as each case only presents the court with a narrow question to resolve, it can have no occasion to order wholesale reform of an agency program. *** The court generally may not prescribe specific tasks for [the agency] to complete; it must allow [the agency] to exercise its discretion and utilize its expertise in complying with broad statutory mandates.").

The Third Amended Complaint seeks to sidestep the final-agency-action requirement by deeming final agency action into existence: a "de facto" denial of Plaintiffs' RRF applications given the covered period's expiration. ECF No. 74 at 4. But Plaintiffs cite no legal authority suggesting that the Court can deem their applications "de facto" denied. Nor do Plaintiffs explain how the Court could apply the arbitrary-and-capricious standard to a "de facto" denial.

In the end, "[t]he core question" when it comes to final agency action "is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). Here, Plaintiffs concede that "[n]one of [their] applications were ever fully approved or denied." TAC ¶ 68. In other words, Plaintiffs remain in the same legal position as when they submitted their RRF applications. So the Court is left with a "generic challenge" to an administrative scheme. *Lujan*, 497 U.S. at 891; *see Norton*, 542 U.S. at 64 ("The limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan*."). Because SBA has never completed its decisionmaking process for these applications, there is no action for this Court to review. *See also Reboot Macon*, 2023 WL 4672395, at *3 n.4 (concluding that this "no final agency action" argument is "likely meritorious" but declining to reach the issue given the jurisdictional holding that the covered period's expiration mooted the plaintiffs' claims).

### B. In all events, SBA's handling of Plaintiffs' applications did not constitute legal error.

Even accepting Plaintiffs' "de facto" denial theory *arguendo*, the Third Amended Complaint would still fail to show legal error. Put another way, Plaintiffs never explain why it would be unreasonable for SBA to treat a funding application as denied once funding runs out and any hypothetical funding that might become available can no longer be used. If anything, Plaintiffs' argument—that an agency acted unreasonably by implementing a congressional deadline—turns administrative law on its head: Plaintiffs cannot ignore the statutes that created and govern the RRF program. *See Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 3 F.4th 390, 399 (D.C. Cir. 2021) ("Federal agencies are creatures of statute. They possess only those powers that

15

Congress confers upon them."). In short, Plaintiffs fail to show that it would be arbitrary or capricious for SBA to treat pending RRF applications as denied once the covered period expired.

*  *  *

Apart from this "de facto" denial theory, Plaintiffs also critique how SBA processed and paid applicants from May 3 to July 2, 2021. During that time, SBA began processing applications in submission order and funded applications after processing them to full approval. *See* TAC ¶ 85. As SBA acknowledges, because "some applications were more complicated than others and took more time to review," a "complicated, earlier-filed application may not have been fully approved and paid out until after a later-filed, simpler application." TAC ex. A ¶ 8.[6] But that acknowledgement does not render SBA's past processing methodology unlawful.

As a threshold matter, this since-superseded processing methodology is not before the Court. The Third Amended Complaint acknowledges that SBA abandoned this methodology after the RRF's initial expenditure; when it came time to distribute the re-available $83 million, SBA issued awards "to applicants whose applications were 'fully processed and approved, in the order in which their applications were submitted.'" TAC ¶ 45 (quoting TAC ex. A ¶ 17). And once a challenged methodology "is off the books and replaced with a 'new rule,'" the challenge to the earlier methodology "becomes moot, leaving [the Court] with an absence of jurisdiction to decide the issue." *Pleasant View Baptist Church v. Beshear*, 838 F. App'x 936, 938 (6th Cir. 2020) (collecting examples). In other words, courts "can neither declare un[lawful] nor enjoin" a methodology "that is no longer in effect." *Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004). Or, as another RRF case in this Circuit explained, "[p]ast exposure to [allegedly] illegal conduct does not in itself show [the] present case or controversy" required for jurisdiction. *Infidels, LLC v. Guzman*, No. 3:22-391, 2023 WL 5599605, at *3 (M.D. Tenn. Aug. 29, 2023) (dismissing claim for declaratory relief on jurisdictional grounds).[7] This Court should

---

[6] The Third Amended Complaint occasionally uses more colorful language to describe this central allegation, but the substance of Plaintiffs' critique appears to remain the same. *Cf., e.g.*, TAC ¶ 67 ("Defendants left complicated applications like Plaintiffs' applications in bureaucratic limbo instead of making a decision on the application.").

[7] For these same reasons, any challenge to SBA's implementation of the priority period is not before the Court either. Paragraph 83 of the Third Amended Complaint baldly asserts that SBA did not initiate processing in submission

16

follow the reasoning of the court in *Chef Time 1520 LLC v. SBA*, which declined to decide a plaintiff's argument that SBA's "deci[sion] to award grants based on the order in which it finished processing applications" was "contrary to the statutory mandate" and violated the APA. TRO Reply 1, No. 22-3587 (D.D.C. Dec. 13, 2022) (ECF No. 15). As the *Chef Time* court put it, "whatever problems existed during the initial distribution of funds in [] 2021 *** the agency [ha]s now distribut[ed] its remaining funds according to the date on which applications were submitted." 646 F. Supp. 3d 101, 114 (D.D.C. 2022).

In any event, paying applications in approval order was neither arbitrary nor capricious. True, 15 U.S.C. § 9009c(c)(1) directed SBA "to award grants to eligible entities in the order in which applications are received by the Administrator." But because this provision limited SBA to awarding "eligible entities," SBA had to confirm an applicant's eligibility before issuing an award. So during initial RRF operations when SBA faced a deluge of applications, SBA had a choice: either no money could be disbursed until the first-filed application was processed to approval— even if that application was so complex and error-ridden that processing took weeks, holding up badly needed relief in the middle of an unprecedented global pandemic—or SBA could allow later-filed/earlier-processed applications to be paid before earlier-filed/later-processed applications. SBA reasonably chose the latter path, which was both consistent with the statutory text[8] and, for that matter, with *Vitolo*, which correctly recognized that § 9009c(c)(1) only "requires [SBA] to *begin* processing grant requests in the order they were received." 999 F.3d at 359 (emphasis added).

### C.  The APA does not authorize Plaintiffs' requested specific relief.

order; when read in connection with Exhibit A, that paragraph appears to reference the priority period. *See* TAC ex. A ¶ 8 (noting that "the actual order in which processing claims begins is determined by the order in which they were received, *subject only to the priority period rules*" (emphasis added)).

[8] In particular, the phrase "received by" suggests that Congress intended SBA's eligibility confirmation to impact payment order. *See Receive*, Oxford English Dictionary (3d ed. 2009) ("To admit or accept (a person or thing)"); *Receive*, Merriam Webster Online, https://perma.cc/CBU5-A63Y ("to accept as authoritative, true, or accurate"); *Receive*, American Heritage Dictionary of the English Language (5th ed. 2022) ("to regard with approval or disapproval" or to "acknowledge formally and authoritatively"). *See generally United States v. Mead Corp.*, 533 U.S. 218, 234-35 (2001) (an agency's statutory interpretation merits deference "given the specialized experience and broader investigations and information available to the agency and given the value of uniformity in its administrative and judicial understanding of what a national law requires").

Besides failing to identify legal error, Plaintiffs fail to ask for appropriate relief. The Third Amended Complaint seeks various forms of specific relief, including forcing SBA to prosecute RRF fraud, to use any recovered funds for new awards, and to continue operating the RRF indefinitely notwithstanding Congress's express contrary commands. But "[i]t is well settled that when an agency makes an error of law in its administrative proceedings, a reviewing court should remand the case to the agency so that the agency may take further action consistent with the correct legal standards." *Cissel Mfg. Co. v. U.S. Dep't of Labor*, 101 F.3d 1132, 1136-37 (6th Cir. 1996) (collecting cases); *see Fed. Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 20-21 (1952) (articulating the "guiding principle *** that the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the [agency] for reconsideration."); *see also Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (rejecting the argument that "'the natural and ordinary relief' to be ordered in setting aside an agency action is to direct the agency to ensure that the claimant is afforded the same outcome that would have followed if the agency had acted correctly" because "district court[s] reviewing a final agency action" "ha[ve] no jurisdiction to order specific relief"). Stated simply, "[s]uccess on an APA claim does not automatically entitle the prevailing party to a permanent injunction." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 137 (D.C. Cir. 2020). At bottom—and at most—success entitles an APA plaintiff to vacatur and remand. *See Chef Time,* 646 F. Supp. 3d at 115 (remanding to SBA for additional explanation of its inability to fund a plaintiffs' fully approved RRF application and noting "the norm is to vacate agency action that is held to be arbitrary and capricious and remand for further proceedings consistent with the judicial decision, without retaining oversight over the remand proceedings").

Moreover, the APA does not enable plaintiffs to obtain relief extending beyond their own claims. Notwithstanding Plaintiffs' request for "an order compelling" SBA to "continue processing all pending applications" and "to award eligible RRF grant recipients *** until all recouped funds are distributed," TAC at 18, judicial orders must "operate with respect to specific parties," not with respect to a statutory or regulatory scheme "in the abstract." *California v. Texas*, 141 S. Ct. 2104,

18

2115 (2021). As Chief Judge Sutton previously cautioned, "a district court should think twice—and perhaps twice again—before" attempting "to 'set aside' agency action against persons not privy to the case before it." *Arizona v. Biden*, 40 F.4th 375, 394-98 (6th Cir. 2022) (Sutton, C.J., concurring).

*   *   *

The preceding remedial discussion brings this case full circle in two ways. *First*, the remedial analysis underscores the lack of final agency action. SBA has not issued a final decision and a corresponding explanation to any Plaintiff. So the Court has nothing to review and, if appropriate, vacate. Just as the Sixth Circuit would decline to review a nonfinal order of this Court, the Court should decline Plaintiffs' attempt to undermine this foundational APA requirement.

*Second*, the remedial analysis underscores the mootness analysis. Even setting aside the lack of final agency action, imagine the practical effect of denying this motion and holding at summary judgment that it was arbitrary and capricious for SBA to pay applications in approval order from May 3 to July 2, 2021. (To be clear, it was not, and the Court does not have jurisdiction to reach the issue in all events.) Or imagine holding that SBA unlawfully withheld or unreasonably delayed action on Plaintiffs' applications. In either case, the remedy would be to remand Plaintiffs' applications to SBA. But SBA cannot correct any hypothetical error on remand, let alone give Plaintiffs an award: the expired covered period and the Fiscal Responsibility Act mean that the RRF no longer exists. Nor could Plaintiffs even obtain declaratory relief: as another district court in this Circuit held, that is now moot too. *See Infidels*, 2023 WL 5599605, at *3. In the end, besides cases litigated in an emergency posture while RRF funding remained available, *see, e.g.*, *Vitolo*, 999 F.3d 353, every Court to consider a challenge to the RRF has dismissed it for lack of subject-matter jurisdiction.[9] This Court should do the same.

**CONCLUSION**

---

[9] Beyond *Kingsley*, *Reboot Macon*, and *Infidels*, courts dismissed several cases seeking monetary damages on sovereign immunity grounds (among other things). *See Robertson Burger Haus, LLC v. SBA*, No. 2:22-4172 (W.D. Mo. Aug. 18, 2023) (ECF No. 33); *MC Mgmt. of Rochester LLC v. Biden*, No. 6:22-6337, 2023 WL 4194771 (W.D.N.Y. June 27, 2023); *Keener v. United States*, No. 2:22-1640, 2023 WL 2478367 (D.S.C. Mar. 13, 2023); *1800 Michigan Ave. v. SBA*, No. 2:22-10377, 2022 WL 2916677 (E.D. Mich. July 25, 2022).

19

20

The Court should dismiss the Third Amended Complaint.

Dated:  October 20, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

*/s/ Kevin Wynosky*
Kevin Wynosky (PA Bar No. 326087)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street N.W., Rm. 12400
Washington, DC 20005
(202) 616-8267
Kevin.J.Wynosky@usdoj.gov

*Attorneys for the Defendants*

21